## Bates Machine Company v. Thomas J. Cookson.

1. PRACTICE—*Appellee Has No Right to Bring Matters Before the Court Which Are Not Raised by Appellant's Appeal.*—Where the appellant appeals from only a portion of a decree, the other matters contained in the decree are not before the court, and if the appellee desires the action of the trial court reviewed with reference to them, it will be necessary for him to sue out a writ of error for that purpose.

2. CONTRACTS—*Estimating the Cost of Manufacture of Machinery for Purpose of Computing Royalties.*—The court reviews the evidence and holds that it warrants the findings of the chancellor.

Bill for an Injunction and an Accounting.—Appeal from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge presiding. Heard in this court at the April term, 1902. Affirmed. Opinion filed October 14, 1902.

GARNSEY & KNOX, attorneys for appellant.

EDWARD MAHER, attorney for appellee; F. A. HILL, of counsel.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

The appellant is an Illinois corporation engaged in manufacturing and selling various kinds of machinery. The appellee, in the month of July, 1895, obtained a patent from the United States Government, on feed water-heaters and purifiers, which is a device used in connection with engines and boilers. In December of the same year he transferred his patent to the appellant by the following written contract:

" Memorandum of Agreement made this 9th day of

December, A. D. 1895, between T. J. Cookson, of Chicago, Cook County, Illinois, party of the first part, and the Bates Machine Company, of Joliet, Will County, Illinois, a corporation organized and doing business under the laws of the State of Illinois, party of the second part:

Witnesseth, that the party of the first part in consideration of the sum of one dollar to him in hand paid, and other valuable presents, hereby grants to the party of the second part the sole right, under letters patent of the United States numbered 542,331, dated July 9th, 1895, and issued to the said T. J. Cookson, to build and sell feed water-heaters and purifiers embodying the improvements patented by said patents, during the life of said patents; also the sole right to build and embody such other improvements in feed water-heaters and purifiers as the said T. J. Cookson may hereafter make or have patented.

As a further consideration for the above grant the said party of the second part agrees to pay to the said party of the first part annually, a royalty or commission of twenty per cent (20 per cent) of the net profits derived from the sale of said feed water-heaters and purifiers between the first day of February, A. D. 1897, and the expiration of the period hereinbefore mentioned, provided the annual net profits do not exceed seven thousand five hundred dollars ($7,500). Should the net profits exceed the sum of seventy-five hundred dollars for any year, then the royalty or commission for that year is to be fifteen per cent. The net profits for each year's business is to be ascertained by figuring the cost of labor and materials as follows: Labor, at the average shop cost per man arrived at in the manner customary with said party of the second part, iron castings at three cents per pound, and wrought iron, steel and fittings at the ruling market prices.

The said party of the first part agrees to hold the said party of the second part harmless from any damages that may result from infringement suits brought, and to personally defend at his own expense any and all suits that may be so instituted by the Excelsior Heating Company, C. E. Ferreira, or any other competitors.

In testimony whereof the parties hereto have hereunto set their hands and seals the day and year first above written.        (Sd.)   T. J. COOKSON,           (Seal.)
                        (Sd.)   BATES MACHINE COMPANY. (Seal.)
                                By W. O. Bates, Sec'y and Treas.
    Signed and sealed in the presence of
        F. M. Ker,
        E. E. Wolcott."

The appellant proceeded to the manufacture and sale of the machines.  The appellee was in the general employ of the appellant, but devoted a considerable portion of his time to this particular branch of the business.  Appellee was unable to obtain an accounting for a long time and when he, on demand, received a statement of the account he rejected it as incorrect.  He then served notice of a rescission of the contract for certain alleged violations thereof by appellant.  The appellant then filed a bill in the Circuit Court of Will County, to enjoin appellee from rescinding the contract and praying for and tendering an accounting.  Appellee answered the bill and filed a cross-bill praying for an annulment of the contract.  A demurrer was sustained to the cross-bill.  Appellee elected to stand by his cross-bill and it was dismissed for want of equity.  A temporary injunction was granted upon the original bill.  A hearing of the cause resulted in a decree making the temporary injunction permanent, and directing the appellant to pay the appellee $2,176.41 on the accounting issue.

From that portion only of the decree directing the payment of the above-mentioned amount, the appellant prosecutes this appeal.

The appellee took no appeal, but assigns cross-errors for dismissing his cross-bill and seeks to reverse the portion of the decree dismissing his cross-bill.  The questions thus sought to be raised are not before us upon this appeal.  Appellant had a right to appeal from the portion of the decree to which it objected.  The appeal brings only that portion of the decree before us for consideration.  If appellee desires the action of the trial court reviewed with reference to other portions of the decree it will be necessary for him to sue out a writ of error for that purpose.

It is urged that the portion of the decree from which the appeal was prosecuted, should be reversed because the trial court misconstrued the contract in ascertaining the net profits, and because in arriving at such profit the court disregarded certain expenditures made by appellee.

Upon proper evidence to sustain it, the decree says:

" The court further finds that upon the execution of the contract hereinbefore set forth, between the parties hereto, it became necessary, in order to manufacture said feed water-heaters and purifiers, to prepare certain patterns from which to make proper castings for the various sizes of said heaters, in the manufacture of which said patterns the said Bates Machine Company expended a considerable sum of money, and that at the time said written contract was entered into, an oral arrangement was made between the said Bates Machine Company and the said Thomas J. Cookson, by which the said Bates Machine Company agreed to stand the expense of the preparation of said patterns in consideration of the said Cookson waiving all royalties on the manufacture of the machines covered by his patent for the period ending February 1, 1897; that the said written contract is silent as to the reason for the waiving of said royalties by Cookson, and that it was therefore competent to show such arrangement by oral evidence."

It is contended by appellant that a proper construction of the contract entitled appellant to deduct from the gross amount of sales not only the shop cost of labor, iron castings at three cents a pound, and wrought iron, steel and fittings at the ruling market prices, but the cost of patterns, advertising, salesmen's salaries and expenses—in brief, the total cost of the article to the time it was sold. It is said these should all be deducted from the selling price to determine the net profit, and that if this had been done no decree could have been rendered against appellant.

It is unnecessary to consider whether the law entitles appellant to such a construction of the contract, for the reason that the court gave the appellant just what it is here complaining that it was deprived of.

The decree says:

" The court further finds that at the time of the execution of said contract between the Bates Machine Company and Thomas J. Cookson, and for some time prior thereto, the said Bates Machine Company had adopted and had in use a certain system for arriving at the average shop cost of labor on the various machines and products manufactured by it, and that this system consisted of charging thirty-five cents per hour for all labor, when in fact the actual cost of said labor was about twenty-three cents per

hour, the difference between the actual cost and the average shop cost so estimated, being intended by the said Bates Machine Company to cover all other items of expense entering to the construction, manufacture, production and sale of its products, which were not embraced within the items of actual labor, iron castings and wrought iron, steel and fittings which actually entered into the construction of such machines, and that said system was arrived at after careful computation by officers and employes of said Bates Machine Company; that at about the time the actual manufacture of these machines began, the Bates Machine Company altered its system for arriving at the average shop cost of labor, by adding to the actual shop cost of labor an additional sum of sixty per cent thereof, to cover all other items of expense connected with the construction, manufacture, production and sale of its products not embraced within the items of actual labor, iron castings and wrought iron, steel and fittings entering into such construction; that the complainant has adopted that (sixty per cent) basis in stating its account with the defendant, and has submitted a statement herein in which it charges defendant with this item, and that the master in chancery in stating the account has ascertained the average shop cost of labor on this basis, and that this system was more favorable to the complainant than the former, and that the defendant has filed no exceptions to the master's action in adopting this basis for determining the average shop cost of labor."

The question therefore is, does the evidence warrant the findings of the chancellor.

Henry J. Gebhardt, an employe of appellant, testified as follows:

" They had a book in the timekeeper's office and I figured up the hours of labor at so much per hour, which made the labor cost, and then they would get the weights of their material the best way they could, add sixty per cent to labor cost, and this was considered the cost of anything that was produced. Sixty per cent was added to cover all other expenses, insurance, salaries and everything."

Edward E. Wolcott testified as follows:

" Cookson sold engines and heaters and anything else we had to sell. In the fore part of 1897 or latter part of 1896 I inaugurated a system of obtaining the cost; before

that time we did not have any regular system; it was more of a guess than anything else. We took the actual labor on every article, the actual cost of material, and we added to the cost of labor sixty per cent to cover general expenses. This covered salaries, office expenses and fuel, taxes and insurance; that is, all expenses, including advertising, freight, office salaries, postage, telegrams, telephone. I think it included commissions and expenses of all persons that did not work in the production of machinery; also included catalogues, circulars and patterns and electrotypes. I think the drawing account was in it."

C. Percy Ufford also testified, as follows:

"Mr. Bates asked me to make up a set of tables showing the cost of the Cookson heaters; all the materials that entered into the cost of the heater, cost of the work done outside of the Bates Company's plant, the actual cost of the labor that was put on the heater in the shop of the Bates Machine Company, and in addition sixty per cent of the shop labor which was added to it. The purpose of that total cost was to ascertain the selling price of each heater. All expenses connected with the business entered into this figure of sixty per cent, which was to cover the salary of non-producing labor, traveling men, traveling expenses, advertising, taxes, insurance, coal, office expenses and such incidental expenses as would naturally come into a business. Office expenses includes stamps, stationery, books, files, furniture and salaries."

The testimony of these witnesses is undenied. It justified the finding of the chancellor. The court properly refused to credit appellant with large amounts for advertising, salaries of traveling salesmen, their expenses and other kindred items, for the manifest reason that they were all included in the sixty per cent added to the actual cost of labor under the term "shop cost per man arrived at in the manner customary" with appellant. Had the decree allowed these items it would have required the appellee to make double payment. Single payment is all the law requires.

What we have heretofore said disposes of the discussion in the respective briefs upon the subject of admissions in defendant's answer. No injustice having been done the

appellant by the decree, the findings being justified by the evidence and the record free from error, the decree of the Circuit Court will be affirmed.

Mr. Justice DIBELL having heard this cause in the court below, took no part in its consideration here.